The **STATE** of Ohio, Appellee,

v.

**MENDOZA, Appellant.**

[Cite as *State v. Mendoza* (2000), 137 Ohio App.3d 336.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5-99-46.

Decided March 31, 2000.

Robert Fry, Hancock County Prosecuting Attorney, and *Kristen K. Johnson*, Assistant Prosecuting Attorney, for appellee.

*J. Stanley Needles*, for appellant.

SHAW, Judge.

Defendant Ricardo Mendoza appeals the August 4, 1999 bench trial verdict of the Hancock County Court of Common Pleas finding him guilty of four counts of felonious assault in violation of R.C. 2903.11.

This case arises from a large fight that occurred in the early morning hours of June 29, 1997, on Clinton Street in Findlay, Ohio. On June 28, 1997, defendant Ricardo Mendoza accompanied a large group of people, including co-defendants Joey Gutierrez, Reynaldo Guajardo, and Jose Guajardo, from Findlay, Ohio, to Toledo, Ohio, to attend the "Rally by the River." Although the testimony offered by the state is conflicting as to the particulars, it is undisputed that at some point during this trip, Joey Gutierrez indicated that he was carrying a knife. Gutierrez testified that he told some of the passengers in the van in which the group was traveling that he "was going to stab somebody." The state's evidence indicated that defendant was in the van at the time Gutierrez claimed to have made this statement.

After the "Rally by the River" ended, defendant and the others traveled back to Findlay and went to the home of defendant's brother-in-law and sister, Alex and Connie Yregras. Testimony offered by the state indicates that defendant was present at the Yregras home with his girlfriend, Alma Ramirez. Also present were Jose Guajardo, his girlfriend Cindy Diaz, and Joey Gutierrez. All present were drinking alcoholic beverages, and it is uncontroverted that at least Joey Gutierrez was heavily intoxicated. Cindy Diaz testified that Joey Gutierrez was "walking around drunk" and that both she and Jose Guajardo heard Gutierrez state that he "felt like he wanted to stab somebody." She also testified that she witnessed Gutierrez "hit" a Salvation Army sign that was hanging up across the street from the Yregras house. Joey Gutierrez himself testified that he "punched" the sign and confirmed that he had at some point during the day made statements that he "was going to stab somebody." He also stated that he displayed the knife to several of the people present that evening, but he wasn't sure which particular people he had shown it to.

At some point, defendant, his girlfriend Alma Ramirez, and Joey Gutierrez left the Yregras house and began to walk toward the home of defendant's cousin Susie Mendoza.[1] According to the state's witness Cindy Diaz, Susie Mendoza lived in a purple house on Clinton Street, across the street from Lloyd Barto, Sr. Earlier that evening Mr. Barto had gathered with his sons Lloyd Jr. and Tim and his son-in-law Ron Radabaugh on the porch of his home. Also present was Mr. Barto's next-door neighbor Larry Laney. All five men had been drinking beer that evening. The evidence is conflicting as to what exactly occurred, but it is apparently uncontroverted that both Joey Gutierrez and the defendant approached the porch of the Barto home (either together or separately) and that one of the two men attempted to get a beer from the Bartos. A fight ensued, during which Joey Gutierrez stabbed Lloyd Barto, Jr., Tim Barto, and Ron Radabaugh. Lloyd Barto, Sr. was severely beaten and kicked, but not stabbed. Larry Laney did not get involved in the fighting.

At some point during the altercation, Reynaldo Guajardo and Jose Guajardo ran from Susie Mendoza's home across the street, apparently to aid the defendant and Joey Gutierrez. Although the state's case is somewhat unclear as to defendant's specific role in the fight, it appears that defendant's actions were generally limited to fighting with Lloyd Barto, Sr. Moreover, the evidence is uncontested that Joey Gutierrez caused the stab wounds to the other three men. However, defendant, Reynaldo Guajardo, and Jose Guajardo were all alleged to have aided and abetted Joey Gutierrez's actions, and were each indicted for four

---

1. The state's brief suggests that they were actually traveling to the defendant's house, see Brief of Appellee, at 4, but there is no evidence in the record of the state's case to support this contention.

**340**

counts of felonious assault. Jose Guajardo and Joey Gutierrez both entered pleas of guilty to the charges arising from their roles in the fight. On July 12, 1999, defendant and Reynaldo Guajardo each waived their right to jury trial, and their cases were jointly presented to the court.

At trial, the state presented testimony as to each defendant's alleged involvement in the incident. Most of the state's witnesses testified that the defendant had approached the house at about the same time as Joey Gutierrez, and that defendant's involvement was basically limited to fighting with Lloyd Barto, Sr. However, Lloyd Barto, Sr. himself testified that defendant was not the man whom he fought with:

"Q: So the tall guy that you described as having on the black shirt that you were rolling around with on the ground is not in the courtroom today?

"A: No.

"Q: It is not this man, and I have my hand on, excuse me, Ray Guajardo, right.

"A: What now?

"Q: I have my hand on Ray Guajardo, it wasn't this guy that you were rolling around on the ground with?

"A: No.

"Q: And it wasn't this man, let the Record show that that I have my hand on Mr. Mendoza, it wasn't this man?

"A: No, I don't think so.

"Q: You say it was the other guy that you said pled guilty before whose name was Jose?

"A: I believe. I am bad with names."

At the close of the state's case, both defendant and Reynaldo Guajardo moved for judgment of acquittal pursuant to Crim.R. 29(A). Defendant contended that the state had presented insufficient evidence to convict him of aiding and abetting Joey Gutierrez's stab assaults on Lloyd Barto, Jr., Tim Barto, and Ron Radabaugh. He also argued that there was insufficient evidence to identify him as the person who fought with and caused serious physical harm to Lloyd Barto, Sr. The trial court overruled all of the Crim.R. 29(A) motions. Both defendants then proceeded to present evidence, and at the close of each defendant's case, the Crim.R. 29(A) motions were renewed and again denied by the trial court.

After the submission of all the evidence, the court took the matter under advisement, and on August 4, 1999, rendered its decision. The trial court

acquitted Reynaldo Guajardo of all charges, but convicted the defendant of all charges:

"Now, with respect to Mr. Mendoza, the same comments the Court made are applicable as well with one important salient difference. Mr. Mendoza was really at the middle of this fracas. Was at its center. In my view was involved in its creation. I believe that he contributed to it in its escalation at the time. I do not accept his testimony and his testimony of his witnesses that he was simply there to pull his friend out of the difficult circumstance.

"He had knowledge, again, of the trouble making nature of Mr. Gutierrez, the knowledge of the knife, in my view. Knowledge of those circumstances [sic]. He had the opportunity, if he had wished, to avoid the circumstance. He chose not to. In my view, from the witnesses, Barto's statement, he was not just there. He was involved, in my view, in the direct participation and creation of this very unfortunate circumstance. Even his own witnesses, in my view, implicated him with respect to his involvement.

"That having been said, the Court finds then, reviewing that, and again in reviewing Mr. Barto[,] Sr[.]'s eye witness testimony, Mr. Mendoza, which [this] Court does not find in and of itself is strong enough to make a conviction, the Court is satisfied from the testimony of all the victims and all the other witnesses that he had direct involvement in this incident, and that my understanding as to the law of aiding and abetting, that his acts are sufficient to find that he aided and abetted in the commission of these four crimes. So [the] Court hereby, based upon the evidence, finds the State has proved beyond a reasonable doubt that Mr. Mendoza is guilty of aiding and abetting in each of the four indictments."

Defendant now appeals, and asserts three assignments of error with the trial court's judgment:

"1. The trial court committed error by not dismissing the charges against the defendant as to counts one, three and four of the indictment, specifically the aiding and abetting felonious assault on Ron Radebaugh [sic], Lloyd Barto, Jr., and Tim Barto, as provided in Criminal Rule 29.

"2. The trial court committed error by not dismissing the second count of the indictment against this defendant at the close of the State's case.

"3. The decision of the trial court is against the manifest weight of the evidence and is contrary to law."

Defendant's first assigned error argues that there was insufficient evidence presented in the state's case-in-chief to sustain defendant's convictions as to counts one, three, and four of the indictment. Those charges are second degree felony violations of R.C. 2903.11(A)(1), which provides that "[n]o person shall knowingly [c]ause serious harm to another * * *." In addressing this assign-

ment of error, we note that the defendant accepts the fact that Ron Radabaugh, Lloyd Barto, Jr., and Tim Barto suffered serious physical harm, see R.C. 2093.11(A)(2), and apparently accepts that Joey Gutierrez acted knowingly when he stabbed them. However, defendant disputes the state's contention that he aided and abetted Joey Gutierrez's felonious assaults on the three men.

R.C. 2923.03(A)(2) states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense," and R.C. 2923.03(F) provides that an aider or abettor "shall be prosecuted and punished as if he were a principal offender." The Fourth District Court of Appeals has summarized Ohio law on the subject of aiding and abetting:

"To 'aid' is to assist and to 'abet' is to incite or encourage. Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act. * * * [I]n order to aid or abet, whether by words, acts, encouragement, support or presence, there must be something more than a failure to object unless one is under a legal duty to object.

"The state may demonstrate that an accused is guilty of aiding and abetting by direct or circumstantial evidence. Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." (Citations omitted.) *State v. Stepp* (1997), 117 Ohio App.3d 561, 568–569, 690 N.E.2d 1342, 1347–1348

Defendant's argument, both at trial and on appeal, is that there was insufficient evidence presented to establish that he "aided or abetted" Joey Gutierrez's felonious assault "with the kind of culpability required" for a felonious assault. Defendant contends that, as a matter of law, the evidence cannot establish that he knowingly aided and abetted Joey Gutierrez. See R.C. 2903.11; R.C. 2923.03.

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

Defendant argues that Joey Gutierrez's actions in stabbing Lloyd Barto, Jr., Tim Barto, and Ron Radabaugh were "unforeseen and unpredictable," and that the trial court improperly relied upon the fact that defendant knew that Joey Gutierrez was a "troublemaker * * * and possessed a knife" to conclude that defendant acted knowingly. Brief of Appellant, at 17. The defendant first urges us to restrict the application of the complicity statute and conclude that "[a]bsent a plan to commit serious physical harm, the defendant cannot be found guilty." *Id.* at 18.

However, the defendant's interpretation of the complicity statute is contrary to the historical understanding of aiding and abetting and has previously been rejected by the Ohio Supreme Court. In *State v. Lockett* (1976), 49 Ohio St.2d 48, 61–62, 358 N.E.2d 1062, 1072, overruled on other grounds by *Lockett v. Ohio* (1978) 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973, the Ohio Supreme Court recognized that a defendant may be convicted as an aider or abettor where there is no prior criminal plan to commit the specific act, upon either "proof of the aider's intent as separated from that of the principal, or *proof that the aider knew the perpetrator had the* [requisite] *intent * * *.*" (Emphasis added.) *Id.,* citing *Woolweaver v. State* (1893), 50 Ohio St. 277, 34 N.E. 352.

Next, defendant argues that the state presented insufficient proof of his culpable mental state to sustain his conviction as an aider or abettor. It has been argued that Ohio's accomplice liability statute requires proof of two mental elements:

"[T]he statute provides that the accomplice's conduct must be accompanied 'with the kind of culpability required for the commission of the offense.' Thus, an aider and abettor to murder must assist the principal with the 'purpose' of causing death, because purpose is the *mens rea* for murder. However, complicity also requires a second mental element. In addition to acting 'with the kind of culpability required for the commission of the offense,' the accomplice must *intend* to aid, abet, solicit, procure, or cause the principal to commit the offense. All these statutory terms imply purpose. In other words, an intent to kill is insufficient; there must also be an intent to assist the principal offender to kill." (Footnotes omitted.) 3 Katz & Giannelli, Criminal Law (1996) 233, Section 92.3. In this context, the first culpable mental state refers to the defendant's attitude towards his own conduct; the second mental element refers to the defendant's attitude towards the principal offender's conduct. The defendant essentially contends that the state failed to present evidence sufficient to support a finding of reasonable doubt as to the second mental element, that he intended to aid or abet Joey Gutierrez' knife assaults.

Most Ohio cases that discuss the mental element of aiding and abetting are murder cases. In *Woolweaver v. State,* for example, the defendant and his two sons were charged with a murder that occurred during a group fight in which they were involved. Although the defendant's son had actually committed the murder, the defendant was charged and convicted as an aider and abettor. The Supreme Court reversed the defendant's conviction:

"1. A person who becomes involved in a fight with one or more antagonists should not, upon that ground only, be held an aider and abettor of another, who may be present, and incited by the struggle to commit an independent act of

violence that causes the death of the antagonist, or one of them, if there were more than one.

"2. In such case, to constitute the person engaged in the fight an aider or abettor of the homicide, it should appear, either that there was a prior conspiracy, or that he purposely incited or encouraged the slayer, *or did some overt act himself with an intent to cause the death of his antagonist.*" (Emphasis added.) *Woolweaver,* 50 Ohio St. 277, 34 N.E. 352, paragraphs one and two of the syllabus.

Here, defendant has essentially argued that the *Woolweaver* syllabus rule precludes a finding that he was liable as an aider or abettor to the felonious assaults committed by Joey Gutierrez. Defendant contends that his intent to aid Gutierrez to commit the three knife assaults cannot be established from the evidence presented and that it "could only be possible to make the necessary culpability finding by transferring the mental culpability from the principal offender, Joey Gutierrez, to the alleged aider and abettor, [defendant] Ricardo Mendoza." Brief of Appellant at *12; cf. *Clark v. Jago* (C.A.6, 1982), 676 F.2d 1099, 1105–1106 (jury instruction permitting transfer of culpable mental state of purpose was violative of defendant's due process rights).

However, we note that in *Woolweaver,* the crime for which the defendant had been convicted was murder, where the required mental element is "purpose." See R.C. 2901.22(B). Here, the state was required to prove only that defendant *knowingly* assisted, incited or encouraged Joey Gutierrez to knowingly cause serious harm to Lloyd Barto, Jr., Tim Barto, and Ron Radabaugh. Cf. *State v. Monroe* (1992), 81 Ohio App.3d 745, 747, 612 N.E.2d 367, 368–369.

■ While we are aware that that the very terms "aid" and "abet" may be construed to imply a shared criminal objective between the principal offender and the complicitor, we reject the theory that in order to be guilty as an aider or abettor, the complicitor must *purposely* intend to aid or abet the principal in committing the crime. Although R.C. 2923.03 does not define aiding and abetting, "the terms 'aid' and 'abet' are familiar and simple legal terms. To aid is to assist. To abet is to incite or encourage. Mere association with the principal is not enough." *State v. Sims* (1983), 10 Ohio App.3d 56, 58, 10 OBR 65, 68, 460 N.E.2d 672, 675. In short, we believe that the statutory terms "aid" and "abet" were merely meant to require that the defendant's conduct be directed—with the culpable mental state of the principal offense—towards accomplishing, assisting, inciting, or encouraging commission of the principal offense. Specifically, plan or purpose is not required to prove a charge with a lesser culpable mental state. Accordingly, in this factual situation, the terms merely indicate that the defendant must have knowingly directed his conduct towards the goal of serious physical harm to Tim Barto, Lloyd Barto, Jr., and Ron Radabaugh, and his

conduct must have acted to assist Joey Gutierrez's knowingly causing that serious physical harm.

Based upon the foregoing principles, there are a number of ways the state could have sufficiently proved that defendant had the culpable mental state of knowing.[2] For instance, if the evidence could reasonably prove that defendant performed an act with the awareness that it "would probably" assist Joey Gutierrez in causing serious physical harm to Lloyd Barto, Jr., Tim Barto, and Ron Radabaugh, the trial court's denial of defendant's Crim.R. 29(A) motion was proper. See R.C. 2901.22(B). The trial court's ruling was also correct if the evidence could reasonably establish that the defendant knew that Joey Gutierrez "would probably" cause serious physical harm to the three men and took some action that would have the likely effect of facilitating that harm, "regardless of [the defendant's] purpose." *Id.;* see, also, *Lockett,* 49 Ohio St.2d at 62, 3 O.O.3d 27, 35–36, 358 N.E.2d at 1072.

Here, the state's case-in-chief contained evidence that, construed most favorably to the prosecution, established that defendant knew that Joey Gutierrez was drunk, had a knife on his person, and had expressed a desire to stab someone several times that day. When construed most favorably to the state, the evidence also permitted the conclusion that the defendant had started the fight, either by making a threatening move towards Lloyd Barto, Sr., or by flicking off Lloyd Barto, Jr.'s hat.[3] Moreover, Lloyd Barto, Jr. testified that when he first felt the

---

2. The state also contends that defendant's mere participation in the fight is sufficient to establish that he aided and abetted Joey Gutierrez. We reject this contention because we believe that Ohio case law clearly requires the state to prove an alleged aider and abettor's culpable mental state. See, *e.g., Monroe,* 81 Ohio App.3d at 747, 612 N.E.2d 367; see, also, *Goins v. State* (1889), 46 Ohio St. 457, 21 N.E. 476, syllabus.

3. We note, however, that the state's brief is less than candid in its description of this event. While Tim Barto did assert that the defendant started the fight by flicking off Lloyd Barto, Jr.'s hat, he also admitted that Joey Gutierrez could have started the fight and that if Lloyd Barto, Jr. testified that Gutierrez was the one who flicked his (Lloyd's) hat, "he would probably be more correct than me [Tim]." Transcript at *268. Lloyd Barto, Jr. did in fact testify that Joey Gutierrez was responsible for flicking his hat and starting the fight. See Transcript at *198. The state also asserts that Tim Barto was "the one victim familiar with the Defendant," Brief of Appellee at 4, but our examination of Tim Barto's testimony reveals that he had, at best, a passing familiarity with the defendant. He is initially uncertain that defendant is the one who accompanied Joey Gutierrez to the house, and on cross-examination admits that he "didn't say 100 per cent it was Mendoza * * * because I did not really glance at his face * * *." Transcript at **274–275. Finally, he misidentifies which house the defendant lives in. Compare Transcript at *274 with *id.* at 349–350. Because the state's assertion that Mr. Barto was "familiar" with the defendant appears to be based entirely on Mr. Barto's supposed knowledge of where the defendant lived, this mistake significantly undermines the credibility of his testimony. However, notwithstanding the tentative nature of this evidence and the state's overly charitable characterization of it, Mr. Barto's testimony does provide evidence

pain of his stab wound, he turned around and witnessed the defendant fighting with Ron Radabaugh. See Transcript at *207. Finally, all four of the victims in this case testified that the two men who initially approached the house did so together.

Although the state's case-in-chief also contained testimony rebutting each of these conclusions, we believe that taken as a whole the foregoing evidence is sufficient to prove the *mens rea* element of the crime of aiding or abetting felonious assault. Cf. *Monroe,* 81 Ohio App.3d at 747, 612 N.E.2d at 368–369. Because there is no dispute as to the other elements of the crime, we conclude that the state presented sufficient evidence from which a rational trier of fact could conclude that defendant knowingly aided and abetted Joey Gutierrez to knowingly cause serious physical harm to Lloyd Barto, Jr., Tim Barto, and Ron Radabaugh. Cf. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Accordingly, we must overrule defendant's first assignment of error.

■ Defendant's second assignment of error argues that there was insufficient evidence presented in the state's case-in-chief to convict the defendant of a felonious assault on Lloyd Barto, Sr. Once again, defendant apparently does not dispute that Lloyd Barto, Sr. suffered serious physical harm during the fight. This argument is based primarily on the fact that Lloyd Barto, Sr. identified Jose Guarjardo as the man he struggled with, rather than the defendant. However, Timothy Barto, Cindy Diaz, and Joey Gutierrez all identified defendant as the person who was present either at the commencement of or immediately after the fight began, and all of the testimony presented in the state's case-in-chief establishes that it was this person who fought on the ground with Lloyd Barto, Sr. While defendant disputes as to which man was on top and which co-defendant caused serious harm to Lloyd Barto, Sr., it is clear that the state presented sufficient evidence from which a rational trier of fact could conclude that defendant Ricardo Mendoza was the man who knowingly caused serious physical harm to Lloyd Barto, Sr. Cf. *Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 at paragraph two of the syllabus. Therefore, we also overrule defendant's second assigned error.

Defendant's third and final assignment of error contends that the trial court's verdict is against the manifest weight of all the evidence. The standard to apply when reviewing such a claim as been set forth as follows:

---

that, if believed by the finder of fact (as it apparently was, see Verdict Transcript at **11–12) is sufficient to support the conclusion that defendant may have started the fracas.

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546–547.

A court of appeals reversing the judgment of a trial court on the basis of weight of the evidence acts as a "thirteenth juror" who rejects the factfinder's resolution of the conflicting testimony. See *id.* at 387, 678 N.E.2d at 546–547, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661–662. Furthermore, appellate courts reverse on the ground of manifest weight only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d at 547 *This is not such a case. The defendant testified in this case and admitted that he knew Joey Gutierrez was drunk, had a knife, and was prone to getting into fights. He also admitted that Joey Gutierrez had told him that "he wanted to stab somebody or something or something like that." Transcript at \*763. Other defense witnesses indicated that defendant "knew Joey was going to start something," see Transcript at \*714, and also that defendant had arrived on the porch prior to the commencement of the fight. See Transcript at \*\*714–717. Finally, there was testimony that defendant and Joey Gutierrez left together after the fight broke up. See Transcript at \*\*740–742. The state presented evidence to support every element of the four offenses, and based on all of the evidence we cannot say that the trial court clearly lost its way in weighing that evidence, or that defendant's conviction creates a manifest miscarriage of justice.*

For these reasons, defendant's three assigned errors are overruled, and the judgment of the Hancock County Court of Common Pleas is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT and WALTERS, JJ., concur.