OPINION
Lisa Pilgrim is appealing the judgment of the Greene County Common Pleas Court convicting her of complicity to robbery and sentencing her to four years of incarceration.
Pilgrim was indicted on January 6, 2000 by the Greene County Grand Jury on one count of complicity to robbery, in violation of R.C. 2923.03(A)(2) and 2911.02(A)(3). After a series of continuances filed on behalf of both parties, the trial commenced on January 3, 2001.
The following evidence was adduced at trial. On September 22, 1999, Stephanie Smith was working the 11 p.m. to 7 a.m. shift at a Dairy Mart in Xenia. At approximately 12:45 a.m., an African-American male entered the store, selected a 40 oz. Budweiser and a sandwich, and approached Smith at the check-out counter. The male placed a note on the counter which stated "Give me all of your money or I shoot you." Smith pulled out the cash register drawer and placed it on the counter on top of the note. The male took approximately $30 in cash and left the store, leaving the note on the counter.
Xenia Police Detective Fred Meadows received a call later that day from a known, confidential source (hereinafter "the source") who indicated that she had information about the robbery. The source cooperated with Xenia police and testified at trial. At trial, the source stated that on the evening of September 22, 1999, she had driven to Hotie's Bar where Pilgrim and Thomas Dale Glass had asked her for a ride. As they neared their destination, Glass noticed two police officers and he quickly redirected the source to the Dairy Mart. The source watched as Pilgrim handed Glass a note which she had previously witnessed Pilgrim write in front of Hotie's Bar, and Glass exited the source's car. Five minutes later, Glass ran out from the Dairy Mart, Pilgrim opened the back passenger door, and Glass re-entered the source's car. He was carrying a 40 oz. beer and a sandwich.
After speaking with the source, Det. Meadows assisted Det. Gerald Merriman in creating a photo spread to display to Smith. Smith was unable to positively identify anyone from the spread, however, approximately ten minutes after reviewing the spread, Smith called Det. Merriman to tell him that there was a male sitting on the bench in front of City Hall in the Xenia Town Square who looked like the suspect who had robbed the Dairy Mart. Dets. Merriman and Meadows approached the male, who said his name was Thomas Dale Glass.
The note presented at the Dairy Mart by Glass was taken with samples of Pilgrim's handwriting to the Miami Valley Regional Crime Lab. Handwriting analyst and documents examiner Julie Bowling analyzed the handwritings and found it to be "probable" that the same person had written them.
The jury found Pilgrim guilty of the offense of complicity to robbery on January 5, 2001. Pilgrim filed a motion for a new trial on January 17, 2001, which the trial court denied. The trial court found Pilgrim guilty and sentenced her on February 22, 2001 to four years incarceration.
Pilgrim now appeals, asserting one assignment of error.
In addition, Pilgrim sets forth a "partial Anders brief" on the issue of ineffective assistance of counsel. We have dealt with several similar appeals where the counsel for the appellant presents assignments of error and includes in one of them an Anders argument. State v. Rourke (Oct. 12, 2001), Greene App. No. 2000 CA 116, unreported; State v. Padgett
(June 30, 2000), Greene App. No. 99 CA 87, unreported. As we stated inPadgett:
 In his brief to this court, Padgett asserts two "arguments" that we will construe as assignments of error. See App.R. 16(A)(3). Oddly, his first such error is advanced by his counsel in the form of an Anders argument. See Anders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. Anders
briefs (not arguments), however, are appropriate when appellate counsel has conscientiously concluded that there are no issues to be raised that merit consideration by the appellate court. Id. If appellate counsel determines there are any issues warranting appellate review, even if there is only one, discussion of non-meritorious issues is neither appropriate nor desirable. Were it otherwise, this court would be required to provide appellants with an opportunity to present their own pro se briefs addressing issues already determined by their appellate counsels to be devoid of merit. While this is a proper procedure in situations where counsel has decided that any appeal would be frivolous, it is not where the appellant's attorney has found an issue or issues worthy of review. For these reasons, we decline Padgett's counsel's invitation to review what he essentially advances as (non-) error.
For the same reasons as those set forth in Padgett, we decline to review the issue raised by Pilgrim's counsel in the form of an Anders
presentation.
 A reviewing court will reverse a verdict where there is not substantial evidence upon which the trier of fact could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.
We note that in a manifest weight of the evidence argument, an appellate court:
 [R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. While Thompkins explicitly permits this court to consider credibility when confronted with an argument that the verdict is against the manifest weight of the evidence, such consideration is not unbounded. We have explained the limited role of an appellate court in reviewing issues of credibility in weight of the evidence challenges as follows:
 Because the factfinder, be it the jury or * * * the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion. Therefore, although this distinction is not set forth in Thompkins, supra, we conclude that a decision by a factfinder as to which testimony to credit, and to what extent, is a decision that is entitled to greater deference than the decision as to how much logical force to assign an inference suggested by that evidence — in short, how persuasive it is.
 State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. Mindful of these principles, we turn to the merits of this assignment of error.
Pilgrim presents two issues for us to examine. For ease of organization we will address these issues simultaneously.
In her first manifest weight of the evidence claim, Pilgrim contends that the State did not prove that Pilgrim had the mens rea of "knowingly" aiding or abetting in the robbery. The basis for this, according to Pilgrim, was that the documents examiner could only state that it was "probable" that Pilgrim had written the note placed on the counter at the Dairy Mart, because there was no eyewitness placing Pilgrim at the scene of the crime, and because the only testimony placing Pilgrim at the Dairy Mart on the night in question was "a drug informer who was likely high at the time or looking to score more" and who thus was an incredible witness.
Pilgrim's second issue for review is that she did not aid or abet anyone in committing the crime of robbery. Pilgrim again argues that because the documents examiner could not definitely say that Pilgrim had written the note, and because the source was incredible, the State failed to prove this element of the offense.
After reviewing the record in this case, we do not find it patently apparent that the jury lost its way. Pilgrim was found guilty of complicity to robbery under R.C. 2923.03(A)(2) and 2911.02(A)(3). R.C.2923.03(A) states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) [a]id or abet another in committing the offense[.]" R.C. 2911.02(A)(3) states "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [u]se or threaten the immediate use of force against another."
Mere presence during the commission of a crime does not necessarily amount to being an accomplice. State v. Jacobs (Sept. 30, 1999), Hancock App. No. 5-99-17, unreported, citing State v. Widner (1982),69 Ohio St.2d 267, 269, 23 O.O.3d 265, 266. To be guilty as an aider or abettor pursuant to R.C. 2923.03, the complicitor must possess the same culpable mental state as that required for the principle offense. Statev. Mendoza (2000), 137 Ohio App.3d 336.
In this case, the source testified that she had picked up Glass and Pilgrim and had driven them to the Dairy Mart. The source witnessed Pilgrim write the note and hand it to Glass, who then entered the Dairy Mart. Smith later identified Glass as the male who had robbed the Dairy Mart. Furthermore, Bowling analyzed the handwriting on the note and samples of Pilgrim's handwriting, and found it "probable" that Pilgrim had written the note.
According to Pilgrim, the source's testimony is incredible and should not be relied upon to convict Pilgrim. We find that the verdict reflects the jury's decision to credit the source's testimony, regardless of the source's admission that she had smoked crack that day and that she had a drug problem. Decisions on witness credibility are primarily for the jury. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus, 39 O.O.2d 366, paragraph one of the syllabus. As we stated inLawson, supra, this decision was within the peculiar competence of the jury because they had seen and heard all of the witnesses, and the determination in that regard is entitled to substantial deference by this court. See, also, State v. Sherrill (Jan. 28, 2000), Montgomery App. No. 17359, unreported. Furthermore, this court finds ample evidence in the record to support the jury's determination that the source's testimony was credible.
On a final note, appellate counsel for Pilgrim presents certain conclusions that he has made since the trial as to the credibility of the source. Our review on appeal is limited to those materials in the record which were before the trial court. See, State v. Ishmail (1978),54 Ohio St.2d 402, 8 O.O.3d 405. We note that no evidence of dishonesty appears in the record. The record does not affirmatively demonstrate the error claimed.
Therefore, based on the aforementioned evidence in the record, we hold that any rational trier of fact could have found, beyond a reasonable doubt, that Pilgrim did have the requisite mental state of having knowingly aided and abetted in the commission of the principle offense of robbery. For these reasons, we find no merit in Pilgrim's assignment of error.
The judgment of the trial court is affirmed.
FAIN, J. and GRADY, J., concur.