[Cite as *State v. Tusing*, 2012-Ohio-5945.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 13-12-24

    v.

TRACY L. TUSING,                    **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Tiffin Municipal Court
Trial Court No. CRB 1100697A&B

**Judgment Affirmed**

**Date of Decision:**    December 17, 2012

APPEARANCES:

    *Kelle M. Saull* **for Appellant**

    *Drew E. Wood* **for Appellee**

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Tracy L. Tusing ("Tusing"), appeals the judgment entry of the Tiffin Municipal Court, finding him guilty of theft and criminal trespass after a jury trial. On appeal, Tusing contends that the verdicts were based on insufficient evidence and were against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} On August 10, 2011, James Hoffert, a farmer, was driving his tractor when he observed a man driving a truck with what appeared to be some old farm equipment, or scrap metal, in the back. Mr. Hoffert was concerned that this might be his property, so he returned to his farm where he discovered that some pieces of his equipment were missing. Mr. Hoffert then went to Danner's Auto Wrecking nearby where he found Tusing attempting to sell the property at the scrap yard. Mr. Hoffert asserted that the farm equipment belonged to him and the sheriff's department was called. Mr. Hoffert identified many distinguishing features of the equipment, in great detail, and it was returned to him.

{¶3} On August 16, 2011, a complaint and summons was filed alleging that Tusing had committed theft in violation of R.C. 2913.02(A), a misdemeanor of the first degree, and criminal trespass in violation of R.C. 2911.21(A)(1), a misdemeanor of the fourth degree. Tusing pled not guilty, and a jury trial was held on April 24, 2012.

{¶4} Mr. Hoffert testified that he was driving his tractor when he happened to take a "quick glance" at a green pickup truck on the road, being driven by a man with brown hair and a brown mustache; he noticed that the truck had some "scrap steel" in the back. (Tr. 78-79) When he got to the lane by his farm, he saw that there were mud tire tracks from a pick-up truck on the road from the lane to his barn. At that point, he went to check on his equipment. When Mr. Hoffert arrived at the barn, he noticed that he was missing a farm harrow and some other items. Mr. Hoffert went to Danner's Auto Wrecking, a nearby scrapyard, and came upon Tusing trying to sell the missing harrow and other equipment.

{¶5} Mr. Hoffert testified that he was able to recognize the harrow as his because of the galvanized steel extensions that he had installed himself, almost twenty years earlier. Mr. Hoffert had also added train rails to the harrow, to give it more weight, and he tied the railroad iron to the harrow with green clothesline. Mr. Hoffert testified that he saw a train rail and a piece of green clothesline in the bed of Tusing's truck. Mr. Hoffert also noticed a "rope wick" in the truck which he recognized because his father and brother had built it by hand, sometime around 1975. He also identified a cultivator, which he knew was his because it was the same sixty-year-old cultivator that Mr. Hoffert had used as a child when he was working on the farm. (Tr. 83-85)

{¶6} Mr. Hoffert further testified that when he confronted Tusing about the property, Tusing claimed to be the owner. Tusing told Mr. Hoffert, "Well, it's going to be your word against mine." (Tr. 86)

{¶7} Two officers from the Wyandot County Sheriff's Department, Lieutenant Neil Riedlinger and Deputy Dennis Wilkinson, also testified as to what occurred when they responded to the call at Danner's. Most of the equipment was still in Tusing's truck, or lying nearby, when they arrived. They obtained a statement from Mr. Hoffert describing how he had noticed that equipment was missing from his farm and how he had discovered Tusing at Donners and in the process of unloading his harrow, cultivator, and other items. (Def. Ex. 1)

{¶8} Both of the officers testified that Tusing had claimed that the equipment was his property and that it had been located in his driveway before he had decided to bring it to the scrap yard. When Lt. Riedlinger pointed out that there were weeds hanging on the harrow, Tusing told Lt. Riedlinger that there were weeds in his driveway and he could show him where the harrow had been sitting. Deputy Wilkinson testified that when he went to Tusing's home the following day, he saw that his driveway was mostly hard-packed mud with some stone in it, and there were no weeds growing in the driveway.

{¶9} When Deputy Wilkinson went to Mr. Hoffert's farm to see where the equipment had been, he could see the grass had been matted down and was caked

with mud from a vehicle's tires, where it appeared as if a truck had been driven up to the areas where the piles of equipment had been. He also noticed that there was still dried mud on the roadway where someone had driven out of the driveway. Deputy Wilkinson testified that the tire tracks appeared to be from a truck, not a car or a tractor.

{¶10} Defense counsel did not call any witnesses, but attempted to discredit the State's witnesses on cross-examination by questioning them concerning some discrepancies between their testimony at trial and what they had originally reported. Mr. Hoffert had testified that the truck he had originally seen driving on the roadway was green. However, Tusing's truck that had the farm equipment in it at Donners was black. Furthermore, Mr. Hoffert had stated that the mustached-man driving the green truck had brown hair. Although Tusing did have a mustache, his hair color was described as "sandy-blond." (Tr. 109)

{¶11} The jury found Tusing guilty on both counts. The trial court sentenced Tusing to 180 days in jail, with 30 days suspended. Tusing now brings this appeal, raising the following two assignments of error for our review. His sentence has been stayed pending the appeal.

**First Assignment of Error**

**The Jury Verdict of Guilty to the theft was based on insufficient evidence and was against the manifest weight of the evidence.**

## Second Assignment of Error

**The Jury Verdict of Guilty to criminal trespass was based on insufficient evidence and was against the manifest weight of the evidence.**

{¶12} Both of Tusing's assignments of error allege that there was insufficient evidence to support the jury's verdicts and that the judgments were against the manifest weight of the evidence. Because both of the assignments of error are interrelated and involve some of the same testimony and evidence, we shall address them together.

{¶13} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence submitted at trial, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997–Ohio–52 (stating, "sufficiency is the test of adequacy"); *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jenks*, supra; *Jackson v. Virginia*, 443 U.S. 307 (1979). This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175 (1st. Dist.1983).

{¶14} A challenge to a conviction based on the manifest weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d at 387.

{¶15} In determining if a conviction is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence *and all reasonable inferences*, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Emphasis added.) *State v. Mendoza*, 137 Ohio App.3d 336, 346–347 (3d Dist.2000), quoting *State v. Martin*, 20 Ohio App.3d at 175, see, also, *State v. Thompkins*, *supra*. A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. *Thompkins* at 387.

{¶16} Although the appellate court acts as a "thirteenth juror" when reviewing for manifest weight, it still must give due deference to the findings

made by the fact-finder. *State v. Thompson*, 127 Ohio App.3d 511, 529 (8th Dist.1998). The fact-finder, being the jury, occupies a superior position in determining credibility. *Id*. When examining witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986).

{¶17} In his first assignment of error, Tusing asserts that there was insufficient evidence to find him guilty of theft and that the jury's decision was against the manifest weight of the evidence. Tusing challenges the jury's findings because of the discrepancy between Mr. Hoffert's testimony in that Mr. Hoffert stated he saw a green truck carrying scrap metal, and yet Tusing's truck was black. And, Mr. Hoffert stated that the green truck's driver had brown hair, and apparently, Tusing's hair was closer to "blond." Tusing further complains about the fact that the officers did not try to "match" the tire tracks to Tusing's vehicle; nor did they do any further investigation as to whether the equipment actually belonged to Mr. Hoffert; nor did they question Mr. Hoffert's hired worker to find out whether he might have taken the equipment.

{¶18} In order to obtain a conviction for theft in violation of R.C. 2913.02(A), the State was required to prove that Tusing knowingly obtained or exerted control over Mr. Hoffert's property, without his consent, with an intent to

deprive Mr. Hoffert of the property. Mr. Hoffer testified that the equipment was his property and that it had been taken without his knowledge or permission. Tusing was found at the scrap yard with Mr. Hoffer's equipment in his truck, and he was trying to sell the property for scrap value. Tusing knowingly exerted control over the property, and even tried to claim that it belonged to him. Viewing these facts in a light most favorable to the prosecution, there is no question that the State had sufficient evidence of each of the elements of the offense required for a theft conviction.

{¶19} Finding that there was sufficient evidence to support Tusing's conviction for theft, we look at the second part of his assignment of error, claiming that the decision was against the manifest weight of the evidence. Although there was some discrepancy as to the color of the truck and Tusing's hair, that still does not change the fact that it was Tusing who was found at Donner's exerting control over Mr. Hoffert's property. There could be various explanations as to the discrepancies in Mr. Hoffert's testimony and statement. He specifically testified that he only had a "quick glance" at the truck driving down the road. At that time, he had no reason to be concerned about identifying the driver because he had not yet learned that his equipment was missing. Although Mr. Hoffert admitted that he could not positively identify Tusing as the driver of the green pickup, he also testified that he couldn't rule him out. (Tr. 81)

{¶20} Furthermore, Tusing did not offer any explanation to the officers as to how he might have innocently come into possession of the farm equipment. Instead, he boldly asserted that it was *his* property, and even challenged Mr. Hoffert, stating that it would be his word against Mr. Hoffert's. Tusing's claim was contradicted by Mr. Hoffert's testimony describing very specific details about the farm equipment that had been in his family for years, and how it was distinguishable from any other harrow or piece of equipment because of the custom modifications that had been done by Mr. Hoffert and his family. Tusing's claim that the harrow had weeds hanging from it because it had been sitting in his weed-laden driveway was contradicted by Deputy Wilkinson's testimony.

{¶21} The jury was in a superior position to judge credibility, and we cannot say that its conclusion that the farm equipment belonged to Mr. Hoffert was against the weight of the evidence. Tusing had Mr. Hoffert's equipment in his truck, without permission, and there was no logical explanation as to how he might have innocently obtained it that would have been consistent with his behavior and claims. It was reasonable for the jury to infer that Tusing was guilty of theft, and we cannot say that there was any evidence that would weigh heavily against conviction.

{¶22} There was sufficient evidence of theft presented in this case that, if believed, would convince a jury of Tusing's guilt beyond a reasonable doubt.

Furthermore, we do not find that the jury's decision was against the manifest weight of the evidence. Tusing's first assignment of error is overruled.

**{¶23}** In the second assignment of error, Tusing argues that the State failed to present sufficient evidence that Tusing knowingly entered on the land of Mr. Hoffert without privilege to do so, in order to find him guilty of criminal trespass beyond a reasonable doubt. *See* R.C. 2911.21(A)(1). Tusing argues that there was no evidence that Tusing was on the farmer's property; nobody saw him there; there was no evidence that his vehicle was on the property; and, there was no testimony that there was fresh mud on his truck or that the tire tracks were a match. He asserts that there was nothing to indicate that Tusing had ever entered onto the farmer's land.

**{¶24}** We agree with Tusing that there was no eye-witness testimony that placed him on Mr. Hoffert's property, nor was there any physical evidence that would prove that his truck had been on the property. However, "[i]t is a well-settled rule of law that direct evidence is not necessary for the trier of fact to make a finding; circumstantial evidence has the same probative value." *State v. Shoopman*, 3d Dist. No. 14-10-17, 2011-Ohio-2340, ¶ 35. Direct evidence of a fact is not a prerequisite for a trial court to make a finding of that fact. *State v. Lott*, 51 Ohio St.3d 160, 167 (1990).

> In fact, circumstantial evidence and direct evidence have the same probative value, *State v. Gillman*, 3d Dist. No. 14–08–08, 2008–

> Ohio–2606, ¶ 17, and "'[c]ircumstantial evidence * * * may also be more certain, satisfying and persuasive than direct evidence .'" *Lott*, 51 Ohio St.3d at 167, 555 N.E.2d 293, quoting *Michalic*, 364 U.S. at 330. Furthermore, "[w]hen the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Williams*, 73 Ohio St.3d 153, 165, 652 N.E.2d 721, 1995–Ohio–275 (internal citations omitted).

*State v. Fisher*, 3d Dist. No. 02–10–09, 2010–Ohio–5192, ¶ 26, 27. Therefore, the lack of direct evidence in this case does not warrant reversal.

**{¶25}** The trial court gave the jury the following instructions concerning circumstantial evidence and making inferences:

> Circumstantial evidence is the proof of facts or circumstances by direct evidence from which you may reasonably infer other related or connected facts which naturally and logically follow according to the common experience of mankind.

> To infer or to make an inference is to reach a reasonable conclusion or deduction of fact which you may, but are not required to, make from other facts which you find have been established by direct evidence. Whether an inference is made rests entirely with you.

(Tr. 131-132) *See, also*, *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 179-181.

**{¶26}** Mr. Hoffert's farm equipment should have been on his farm, where he had left it. Mr. Hoffert observed that it was missing; he saw that there were fresh tire tracks from a truck in the area where the equipment had been; and he discovered the equipment in Tusing's truck at the scrapyard, less than an hour

later. It was certainly reasonable for the jury to infer that the circumstantial evidence indicated that Tusing had come onto Mr. Hoffert's land, without permission, and taken the equipment.

{¶27} And, the above evidence was uncontroverted. Although, Tusing's counsel *suggested* alternate theories as to how the equipment might have ended up in his truck without Tusing having trespassed on Hoffert's property, there was no evidence at trial to provide any basis for the jury to infer or conclude that Tusing had not gone to Mr. Hoffert's farm and taken the equipment to sell for scrap. And, even if there had been evidence of alternate theories of innocence, there is no requirement that the circumstantial evidence indicating guilt must be irreconcilable with any reasonable theory of innocence in order to support a conviction. *See State v. Williams*, 73 Ohio St.3d 153, ¶ 23.

{¶28} Based on the above, we find that there was sufficient circumstantial evidence that Tusing had committed criminal trespass to sustain his conviction, and that the conviction was not against the manifest weight of the evidence. The second assignment of error is overruled.

{¶29} Having found no error prejudicial to the Tusing herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and PRESTON, J., concur.**
**/jlr**