[Cite as *State v. Crumpler*, 2024-Ohio-2309.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

**STATE OF OHIO,**                                              CASE NO. 3-23-10

    **PLAINTIFF-APPELLEE,**

  **v.**

**NYQUAN CRUMPLER,**                                       **O P I N I O N**

    **DEFENDANT-APPELLANT.**

Appeal from Crawford County Common Pleas Court
Trial Court No. 22-CR-0170

**Judgment Affirmed**

**Date of Decision:  June 17, 2024**

**APPEARANCES:**

    *Autumn D. Adams* **for Appellant**

    *Daniel J. Stanley* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Ny'Quan Crumpler ("Crumpler") brings this appeal from the judgment of the Common Pleas Court of Crawford County finding him guilty of one count of felonious assault and illegal possession of a firearm in a liquor permit premises. On appeal, Crumpler alleges that the convictions are against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} This case stems from a bar fight on June 4, 2022. Crumpler and his co-defendant, Dennis Heefner ("Heefner") were having an argument when Crumpler left and went to his car. Crumpler then returned with what appeared to be a firearm. Crumpler and Heefner attacked the victim with Crumpler allegedly striking the victim twice with the firearm. Heefner later held the firearm using it to hold off other bar patrons as Crumpler stomped on the victim. The fight was eventually stopped and the police were called. Before the police arrived, the victim left the bar. The victim subsequently refused to give a statement to the police.

{¶3} On June 7, 2022, the Crawford County Grand Jury indicted Crumpler on one count of felonious assault in violation of R.C. 2903.11(A)(2),(D)(1)(a), a felony of the second degree, and one count of illegal possession of a firearm in liquor permit premises in violation of R.C. 2923.121(A), (E), a felony of the third degree. A firearm specification was attached to count one and the second count carried a specification that the firearm was concealed.

{¶4} A jury trial was held on December 15 and 16, 2022. At the trial, the parties stipulated that the bar where the incident occurred had a Class D liquor permit. The State then presented the following evidence.

{¶5} Michael Zaika testified that he owns the bar in question. In the bar, a camera system records what happens inside and outside the premises. On June 4, 2022, the cameras were working properly.

{¶6} Officer Andrew Rehm ("Rehm") testified that he worked for the Galion Police Department on June 4, 2022. On that day, Rehm responded to a call from a bar regarding a fight with a gun involved. When Rehm arrived, everyone was standing around on the patio, but no one was fighting. Rehm learned from witnesses that the people involved in the fight were no longer there. From witnesses, Rehm learned that Heefner was one of the people involved. While at the bar, Rehm watched the video footage from the fight. Rehm obtained a copy of the footage before he left the bar. The footage showed one of the participants go to his car, put what appeared to be a gun in his pocket, and then reenter the patio area of the bar.

{¶7} After leaving the bar, Rehm and other officers went looking for the car on the video around the area where Heefner resides. Rehm found the car in a driveway of a house on Cherry Street at approximately 3 a.m. Eventually Rehm received a warrant and searched the home. Tr. 195. No firearms were found in the home. On cross-examination Rehm testified that none of the participants in the fight were at the bar when he arrived, two minutes after the call was received by 911.

{¶8} Officer Timothy Duncan ("Duncan") testified that he was working night shift for the Galion Police Department on June 4, 2022. When he arrived at the bar, he was told by the complainant that Heefner and his friend had jumped another individual. The complainant told him that Heefner lived on Cherry St. When they went to Cherry St. and found the vehicle, Duncan ran the registration and found that it belonged to Crumpler. Duncan then pulled Crumpler's photo from the Bureau of Motor Vehicles. Duncan testified that the picture looked like the person in the video. On cross-examination, Duncan stated that none of the people involved in the fight were present when he arrived.

{¶9} Detective Darren Patrick ("Patrick") of the Galion Police Department testified that he investigated the fight at the bar. Patrick helped search Heefner's home and did not find any firearms or anything that looked like a firearm. Later Patrick obtained a search warrant to search Crumpler's vehicle. No firearms, or anything that looked like a firearm, were found in the vehicle. Crumpler eventually called the station to get his car back. On June 9, 2022, Crumpler came to the station and was arrested on a warrant. When questioned, Crumpler admitted to the fight, but claimed the victim had been threatening to kill him with a gun. Crumpler denied going to the car to retrieve a gun. Crumpler then claimed that he took the gun from the victim. Patrick testified that Exhibit 3 was a video showing Crumpler going to his car and then returning with what appeared to be the gun. In Exhibit 4, Patrick pointed out the object in Crumpler's hand, which Patrick believed to be a firearm.

Patrick testified that the video in Exhibit 5 showed Heefner starting the fight by striking the victim's friend. Heefner then hit the victim. While Heefner hit the victim, Crumpler appears to be pulling a firearm from his right front pocket. Later, Crumpler is seen hitting the victim while Heefner holds the gun. Then Crumpler took the gun from Heefner and points the gun at the head of the victim in a threatening manner. In exhibit 9, Crumpler is seen leaving the patio of the bar with what appears to be a firearm in his hand. Eventually Crumpler and Heefner are seen on the video leaving the parking lot in the vehicle owned by Crumpler. On redirect, Patrick testified that when Patrick interviewed Crumpler, Crumpler admitted that there was a firearm involved in the fight. However, Crumpler claimed that the firearm was taken from the victim.

{¶10} On cross-examination Patrick testified that he believes Crumpler was holding a firearm based upon the appearance. The person who called the police, who Patrick believed to be the bartender, indicated to the dispatcher that the patron involved in the fight had a firearm. Additionally, Patrick believes it to be a firearm and not a BB gun from the way in which Crumpler is carrying it, his pointing it at people, and the reactions of the people to the item. However, Patrick admitted that he is not an expert in identifying what is a firearm merely from a picture.

{¶11} Following the testimony of Patrick, the State rested its case. Crumpler then testified on his own behalf. Crumpler testified that while in the bar, the victim threatened to kill Crumpler. Crumpler testified that the victim had previously

stabbed a friend of Crumpler's in the neck. Tr. 283. According to Crumpler, the "firearm" was really a BB gun, but it fell out in the parking lot when he was leaving. Crumpler admitted to punching the victim, but denied hitting him with any type of weapon. After the victim threatened Crumpler, he was going to leave and went to the car. When Heefner did not come out with him, Crumpler grabbed the BB gun because it looked like a weapon and went back inside.[1] Crumpler denied striking the victim with a chair or the firearm. According to Crumpler, the victim indicated that he had a gun on him. Crumpler denied telling Patrick he had a firearm, but claimed he had indicated he had a BB gun instead. After Crumpler testified, the defense rested its case.

{¶12} The jury returned verdicts of guilty as to both counts and both specifications. The trial court held a sentencing hearing on March 15, 2023. The trial court sentenced Crumpler to an aggregate prison term of five to seven years. Crumpler filed a notice of appeal from this judgment. On appeal, Crumpler raised the following assignments of error.

**First Assignment of Error**

**The manifest weight of the evidence did not prove Crumpler used a deadly weapon to cause any physical injury to [the victim].**

**Second Assignment of Error**

**The manifest weight of the evidence did not prove Crumpler carried a firearm into the bar.**

---

[1] A review of Exhibit 3 shows that Crumpler went to the car, opened the door, reached inside to grab something, and then returned to the bar. Crumpler was at the car for approximately five seconds. Ex. 3.

*Legal Standard of Review*

**{¶13}** Both assignments of error challenge the manifest weight of the evidence.

> When reviewing a judgment to determine if it is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Mendoza*, 137 Ohio App.3d 336, 738 N.E.2d 822 (2000). See, also, *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Thompkins at 387, 678 N.E.2d 541. Although the appellate court acts as a "thirteenth juror," due deference to the findings made by the fact-finder must still be given. *State v. Moorer*, 3d Dist. 13–12–22, 2013-Ohio-650, 2013 WL 684735, ¶ 29.

*State v. Hulbert*, 3d Dist. Van Wert No. 15-19-07, 2021-Ohio-2298, ¶ 23.

*Felonious Assault*

**{¶14}** In the first assignment of error, Crumpler claims that the conviction for felonious assault was against the manifest weight of the evidence because the State did not prove that he used a deadly weapon to cause any physical injury to the victim. To prove felonious assault, as charged in this case, the State had to prove that Crumpler 1) knowingly 2) caused or attempted to cause physical harm to another 3) by means of a deadly weapon. R.C. 2903.11(A)(2). A "deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as

a weapon." R.C. 2923.11(A). Crumpler argues that the State failed to prove its case because it did not prove that the victim suffered any physical harm. However, the statute also covers attempts to cause physical harm. A review of the video exhibits showed that Crumpler struck the victim multiple times with what appeared to be a firearm and picked up a chair and struck the victim with that as well. Additionally, Crumpler repeatedly struck the victim with his fists, kicked the victim, and even body slammed him to the ground. Crumpler then pointed the suspected firearm at the victim. Given this evidence, the jury could reasonably conclude that Crumpler was attempting to cause physical harm to the victim and that he did so by using a deadly weapon, i.e. the firearm or the chair. Viewing the video exhibits, the Court cannot find that the jury lost its way in determining that Crumpler committed a felonious assault. The first assignment of error is overruled.

*Possession of a Firearm*

{¶15} Crumpler claims in the second assignment of error that his conviction for possession of a firearm in the bar was against the manifest weight of the evidence because there was no proof that the item possessed by Crumpler was a firearm and not a BB gun as claimed by Crumpler. To prove this charge, the State had to show the following: "(A) No person shall possess a firearm in any room in which any person is consuming beer or intoxicating liquor in a premises for which a D permit has been issued under Chapter 4303 of the Revised Code or in an open air arena for which a permit of that nature has been issued." R.C. 2923.121. A "firearm" is

defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). The state can prove that an item is a "firearm" from the totality of the circumstances such as the claims and actions of the person controlling the alleged firearm. R.C. 2923.11(B)(2), *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 and *State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 (1990).

{¶16} The parties stipulated to the fact that the bar was a Class "D" liquor permit holder as required by R.C. 2923.121(A). The lack of the actual alleged firearm made it more difficult for the State to show that Crumpler possessed a firearm rather than a BB gun. However, the State was able to present some evidence for the jury to consider. The video exhibits showed Crumpler holding what appeared to be a firearm. The testimony of Patrick was that the item appeared to be a firearm and not a BB gun. Patrick testified that the item looked like a firearm, Crumpler held it like it was a firearm, and the people at the bar believed it was a firearm. Patrick also testified that Crumpler, when interviewed by Patrick, admitted that he was holding a firearm that he had taken from the victim. Rehm testified that person who called 911 indicated that they believed the item was a gun. Crumpler testified that it was not a firearm, but rather a BB gun. Crumpler also indicated that Patrick had misunderstood him and that he had never claimed the item was an actual gun. Despite the conflicting evidence, the jury was able to weigh the evidence and

reach a conclusion. The jury in this case determined the item to be a firearm, not a BB gun as claimed by Crumpler. Given the evidence before it, we do not find that the jury clearly lost its way or that the verdict is against the weight of the evidence. The second assignment of error is overruled.

{¶17} Having found no prejudicial error in the particulars assigned and argued by appellant, the judgment of the Common Pleas Court of Crawford County is affirmed.

*Judgment Affirmed*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**