[Cite as *State v. O'Leary*, 2016-Ohio-8095.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

TERRY L. O'LEARY,

    DEFENDANT-APPELLANT.

CASE NO. 13-16-14

O P I N I O N

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

TERRY L. O'LEARY,

    DEFENDANT-APPELLANT.

CASE NO. 13-16-15

O P I N I O N

**Appeals from Seneca County Common Pleas Court**
**Trial Court Nos. 15 CR 0259 and 15 CR 0010**

**Judgments Affirmed**

**Date of Decision:  December 12, 2016**

**APPEARANCES:**

    *Jennifer L. Kahler* **for Appellant**

    *Rebeka Beresh* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Terry L. O'Leary ("O'Leary") brings this appeal from the judgments of the Court of Common Pleas of Seneca County finding him guilty of receiving stolen property and of violating the terms of his community control sanctions. O'Leary claims that 1) the conviction was not supported by sufficient evidence; 2) the conviction is against the manifest weight of the evidence, and 3) that he was denied the effective assistance of counsel. For the reasons set forth below, the judgments are affirmed.

{¶2} This case stems from a claim that on November 14, 2015, O'Leary had driven a taxi cab that had been reported as stolen. Doc.A 2.[1] At the time of the alleged offense, O'Leary was under community control sanctions. Doc.B 31. A community control violation was filed on November 25, 2015. Doc.B 38. On December 9, 2015, the Seneca County Grand Jury indicted O'Leary on one count of receiving stolen property in violation of R.C. 2913.51(A), (C), a felony of the fourth degree. Doc.A 2. The matter proceeded to a bench trial, which was held on April 14, 2016. At the conclusion of the trial, the trial court found O'Leary to be guilty of the charged offense. 2016 Doc. 31. On May 6, 2016, O'Leary waived his right to a revocation hearing on the community control violation and admitted to the

[1] As there are two different cases with two different records in this case, the dockets will be identified separately. The docket for trial court case no. 15-CR-0259, which is the primary case raised on appeal, and appellate case number 13-16-15 will be identified as "Doc.A" The docket for trial court case no. 15-CR-0010 and appellate case number 13-16-14 will be identified as "Doc.B"

violation based upon his conviction in trial court case no. 15-CR-0259. Doc.B 50. O'Leary was then sentenced to a prison term of nine months with credit for 73 days for violating the terms of his community control. *Id.* That same day, a sentencing hearing was held on the receiving stolen property conviction. Doc.A 33. The trial court ordered Appellant to serve a prison term of 14 months in prison with credit for 171 days of time served on this conviction. *Id.* The sentence was ordered to be served consecutive to that for the community control violation for a total prison term of 23 months. *Id.* O'Leary filed a timely notice of appeal in both cases. Doc.A 37 and Doc.B 54. On appeal O'Leary raises the following assignments of error.

### First Assignment of Error

**The trial court erred in finding [O'Leary] guilty of receiving stolen property where the State failed to introduce sufficient evidence to support the conviction.**

### Second Assignment of Error

**The trial court erred in finding [O'Leary] guilty of receiving stolen property when the conviction was against the manifest weight of the evidence.**

### Third Assignment of Error

**[O'Leary] was not provided effective assistance of counsel when [O'Leary's] attorney failed to request that the trier of fact consider unauthorized use of a vehicle.**

### Fourth Assignment of Error

**The trial court erred in finding [O'Leary] violated the terms of his community control for the reason he was convicted of receiving stolen property.**

*Trial Testimony*

**{¶3}** In order to address the first and second assignments of error, a review of the evidence presented at trial must occur. The State presented the testimony of six witnesses. The first witness was Scott McIntyre ("McIntyre"). McIntyre testified that he had been friends with O'Leary since they were children. Tr. 8. On November 8, 2015, McIntyre, O'Leary, and Tonya Currier ("Currier") went out in Findlay, Ohio. Tr. 8-9. Eventually, McIntyre dropped O'Leary off at the cab station where O'Leary lived, and McIntyre and Currier went to Fostoria. Tr. 9. In Fostoria, O'Leary pulled up beside them in a cab. Tr. 10. At the time, McIntyre did not think it was strange because O'Leary lived above the cab company and worked for it as well. Tr. 10. When they met up, O'Leary told him that he needed to get the cab back to the station. Tr. 10. The cab said "Tiffin Cab Service" on the side. Tr. 11. On cross-examination McIntyre indicated that he had "known William [Omlor] to give [O'Leary] keys to his own personal vehicles and the cabs", so seeing O'Leary driving the cab did not seem odd. Tr. 13.

**{¶4}** Karen Bloom ("Bloom") testified that she worked at the Southside Drive Thru in Fostoria. Tr. 16-17. On November 14, 2015, she observed a "cab flying up and down the road and a customer that came through crying." Tr. 17. The cab was a yellow Tiffin cab driven by a guy who was screaming and chasing another

vehicle. Tr. 18. On both direct and cross-examination, Bloom indicated that she did not know who the driver of the cab was. Tr. 20.

{¶5} William Omlor ("Omlor") testified that he owns "Tiffin Service Cab." Tr. 21. On the side of each of his cabs is the logo with the name "Tiffin Service Cab", a phone number, and the cab number. Tr. 22. Omlor testified that he and O'Leary had been friends for over 20 years and that he had employed O'Leary as a "part-time midnight dispatcher, part-time taxi cab washer." Tr. 23. At no time was O'Leary employed as a driver. Tr. 23. On November 14, 2015, Omlor received a phone call from one of his dispatchers about a missing cab. Tr. 24. Omlor instructed her to notify the police that the cab unit 4-2 had been stolen. Tr. 24. Omlor then went to Fostoria because of the reports of the driver of the cab being erratic. Tr. 24. Omlor stopped the cab at the intersection of State Route 587 and Township Road 112 and determined that the cab was being driven by Currier at that time. Tr. 25. Currier then jumped out of the vehicle and got into another vehicle. Tr. 26. Omlor testified that he had not given O'Leary permission to use the vehicle that night. Tr. 26. Although Omlor thought of O'Leary as a friend, he testified that he did not give O'Leary permission to drive the cab on November 14, 2015, and he was not doing so as part of his job. Tr. 78.

{¶6} On cross-examination Omlor testified that O'Leary lived at the cab station and had access to the cabs keys. Tr. 79. Omlor testified that if had known O'Leary had the cab and there had been no complaints from Fostoria, he would not

have called the police. Tr. 80. Omlor never believed that O'Leary meant to keep the cab and he testified that he was not convinced that O'Leary had been the one to use the cab. Tr. 80. However, if O'Leary were the one using the cab, Omlor would consider it stolen. Tr. 80. Omlor admitted that in the past, he had given O'Leary permission to drive his vehicles. Tr. 81. Omlor denied that O'Leary had ever made "runs" in a cab for Omlor. Tr. 84. Though, Omlor admitted on redirect that he had allowed O'Leary to drive a cab without a license to pick up parts for the cab company. Tr. 85.

{¶7} Patricia Standley ("Standley") testified that she resided in Fostoria. Tr. 91. On November 14, 2015, she heard an argument outside her house amongst McIntyre, Currier, and O'Leary. Tr. 92. When they left, Standley saw O'Leary drive away in a cab from "Tiffin Cab." Tr. 92. Rebecca Nigh ("Nigh") testified that she lived with Standley. Tr. 95. Like Standley, Nigh heard the argument and saw O'Leary leave driving a cab. Tr. 96.

{¶8} Detective Lieutenant Mark E. Marquis ("Marquis") testified that he is employed by the Tiffin Police Department. Tr. 98. Marquis testified that he investigated the reported theft of the cab. Tr. 99. Omlor told Marquis that he had located his cab in Seneca County, had stopped the cab, and that the driver had fled from the vehicle. Tr. 100. His investigation led to an identification of O'Leary as being the driver of the cab at some point in time that evening. Tr. 102-103. On cross-examination, Marquis admitted that he had no direct evidence as to who had

stolen the vehicle and that is why O'Leary was charged with receiving stolen property. Tr. 107.

{¶9} After the State's final witness, O'Leary's attorney recalled Omlor to the stand to testify for him. Tr. 109. Omlor stated that if O'Leary had called him, he would have let him borrow one of his personal vehicles. Tr. 111. However, Omlor reiterated that Omlor had not asked to borrow any vehicle and had not been given permission to use any vehicle on November 14, 2015. Tr. 112.

{¶10} O'Leary then took the stand in his own defense. O'Leary testified that he did some pickups or "runs" when working for Omlor though he did not have a chauffeur's license. Tr. 116. O'Leary indicated that he would regularly use Omlor's vehicle, including using a cab for his personal use. Tr. 116-17. O'Leary admitted to driving the cab on November 14, 2015. Tr. 117. However, he had no intention of doing anything other than returning the vehicle to Omlor. Tr. 117. O'Leary testified that he had keys to the cab used that were given to him by Omlor. Tr. 118. O'Leary indicated that he believed based upon the past practices and statements by Omlor that he was allowed to use any of the vehicles, including the cab, whenever he wanted. Tr. 118-19. Currier came into possession of the cab when she took it from him and he followed her to try and retrieve it because he was concerned what she would do with it. Tr. 119. According to O'Leary, the relationship between him and Omlor was such that he had previously borrowed vehicles without asking permission and that was accepted as normal. Tr. 121-22.

On cross-examination, O'Leary admitted that he was not working when he took the cab to Fostoria. Tr. 125-26.

*Sufficiency of the Evidence*

{¶11} O'Leary claims in the first assignment of error that the judgment of the trial court was not supported by sufficient evidence. A claim of sufficiency of the evidence raises a due process question concerning whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶219, 954 N.E.2d 596 (citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541). "On review of the sufficiency of the evidence to support a criminal conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶34, 840 N.E.2d 1032 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560).

{¶12} O'Leary was charged with one count of receiving stolen property in violation of R.C. 2913.51(A), (C). To prove this charge, the State had to present evidence that O'Leary 1) received, retained, or disposed of the property of another 2) while knowing or having reasonable cause to believe 3) that the property had been stolen. Omlor testified that he did not give O'Leary permission to use the vehicle and that he had reported the vehicle as stolen. Multiple people testified that

-8-

they had observed O'Leary driving the vehicle while in Fostoria. O'Leary admitted to being in possession of the vehicle and that he had not received express permission to use the vehicle. The testimony presented indicated that the cab was taken without the permission of the owner, i.e. stolen, that O'Leary knew the vehicle had been taken without the permission of the owner, and that he was in possession of it while it was in the Seneca County section of Fostoria. Viewing the evidence in a light most favorable to the State, the evidence is sufficient to support the charge of receiving stolen property. The first assignment of error is overruled.

*Manifest Weight of the Evidence*

{¶13} In the second assignment of error, O'Leary claims that the verdict was against the manifest weight of the evidence. When reviewing a judgment to determine if it is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Mendoza*, 137 Ohio App.3d 336, 2000-Ohio-1689, 738 N.E.2d 822 (3d. Dist.). *See, also, State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. *Thompkins* at 387. Although the appellate court acts as

a "thirteenth juror," due deference to the findings made by the fact-finder must still be given. *State v. Moorer*, 3d Dist. 13-12-22, 2013-Ohio-650, ¶ 29.

**{¶14}** When reviewing this case, there is no question that the primary issue for the trial court to determine was whether the defendant knew or should have known the vehicle was stolen. Much of the finding of guilt rests upon a determination of credibility. There is no dispute that O'Leary lacked the express consent to use the vehicle on the night in question. Instead, the question raised is whether O'Leary had been given implied consent to use the vehicle. If the trial court believed O'Leary's testimony that Omlor had given him implied consent to use the vehicle freely, then it could be reasonably argued that O'Leary did not know that the use would cause anyone to believe the vehicle was stolen. However, if the trial court believed that Omlor had not given O'Leary implied consent to use the vehicle whenever he wished, then O'Leary should have known that the vehicle would be deemed stolen by the owner. After reviewing the evidence, this court does not find that the trial court clearly lost its way and that a manifest miscarriage of justice resulted. Therefore, the judgment is not against the manifest weight of the evidence. The second assignment of error is overruled.

*Ineffective Assistance of Counsel*

**{¶15}** O'Leary's third assignment of error alleges that he was denied effective assistance of counsel because his attorney failed to request the trial court to consider the lesser charge of unauthorized use of a vehicle.

-10-

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**
>
> **On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. *See Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164; *State v. Jackson*, 64 Ohio St.2d at 110–111, 18 O.O.3d at 351, 413 N.E.2d at 822.**

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905. "The failure to prove either 1) a substantial violation or 2) prejudice caused by the violation makes it unnecessary for a court to consider the other prong of the test." *State v. Walker*, 3d Dist. Seneca No. 13-15-42, 2016-Ohio-3499, ¶ 20.

{¶16} Here, O'Leary argues that he was prejudiced by his counsel failing to request that the trial court also consider the misdemeanor charge of unauthorized use of a vehicle. The failure to request that a trial court consider a lesser offense is a matter of trial strategy and does not establish a claim of ineffective assistance of counsel. *State v. Griffie*, 74 Ohio St.3d 332, 1996-Ohio-71, 658 N.E.2d 764. *See*

*also*, *State v. Lyle*, 3d Dist. Allen No. 1-14-41, 2015-Ohio-1181, ¶ 37. For this reason, the third assignment of error is overruled.

*Community Control Violation*

**{¶17}** Finally, O'Leary claims that the trial court erred in finding that he had violated the terms of his community control due to the conviction for receiving stolen property. This court has previously addressed the receiving stolen property conviction in the prior assignments of error. Having found no error, the conviction is affirmed. The terms of O'Leary's community control included a provision that he would obey all state laws. O'Leary failed to abide by that provision and admitted to such at the hearing. Thus, the trial court did not err in finding that O'Leary had violated the terms of his community control sanctions. The fourth assignment of error is overruled.

**{¶18}** Having found no error prejudicial to the Appellant in the particulars assigned and argued, the judgments of the Court of Common Pleas of Seneca County are affirmed.

*Judgments Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/hls**